332 So.2d 120 (1976)
Calvin CARTER, Appellant,
v.
STATE of Florida, Appellee.
No. 75-487.
District Court of Appeal of Florida, Second District.
May 19, 1976.
Amended on Rehearing June 10, 1976.
*121 Lester W. Jennings, Okeechobee, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Davis G. Anderson, Jr., Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
The parties will be referred to as in the trial court. Defendant, Calvin Carter, timely appeals an adverse judgment and sentence rendered upon a jury verdict finding him guilty of rape. He was sentenced to serve 50 years in the state penitentiary. The facts adduced in evidence at the trial are as follows:
The victim and her husband lived in a trailer in Moore Haven, next to her inlaws. At approximately one o'clock in the morning of April 23, 1974, a telephone call was received by the victim's father-in-law, who operated a wrecker service business. The victim's husband listened to this conversation on an extension line. The caller advised that he had a tractor-trailer loaded with watermelons stuck on Highway 80 and gave directions on how to get there. There was also a brief discussion regarding cost. It was customary for two men to go out together on the night calls. Thereafter, the victim's husband went to join his father and the victim locked the trailer door and returned to bed. Both men left in the wrecker and proceeded to Highway 80 where they drove up and down the road looking for the alleged stranded vehicle, but were unable to find it. In the interim, while the men were looking for the truck, an assailant severed the victim's telephone lines, broke out a jalousie window on the trailer door, cut a small hole in the screen next to the lock and gained his entrance to *122 the trailer. The victim was asleep on her stomach. She was awakened by her assailant, who was armed with a knife. The sexual act was completed in such a manner that the victim was unable to see the assailant's face. She did subsequently identify him by voice identification. The defendant's voice was also identified by other witnesses who testified for the state.
We state that in view of the record, the victim was attacked and raped by force and against her will as she testified. It is submitted that there is ample evidence, both direct and circumstantial, to support the judgment of conviction; however, we do mention that the evidence was not overwhelming.
Nevertheless, what has caused us to deliberate and study this case for what may be regarded as an inordinate period of time is the acceptance and recognition of our responsibility and duty to determine, upon review of the complete record, whether the defendant received a fair and impartial trial by his peers. It has been said that the most despicable wretch that walks the face of the earth is entitled to a fair trial  a defendant charged with the reprehensible and heinous crime of rape is no exception. After tedious review of the voluminous record we conclude that the defendant was denied his right and opportunity of a fair and impartial trial as prescribed by the Constitutions of Florida and the United States.
We shall now proceed to discuss certain of the alleged errors raised by defendant on this appeal. Initially, we consider the point of whether the trial court erred, as defendant contends it did, in allowing Mr. Herndon to serve as a member of the jury. During the voir dire examination, the following colloquy took place between the court and Mr. Herndon:
THE COURT: Take Seat Number 5, Mr. Herndon. You know some of these people, Mr. Herndon. Which ones do you know the best?
MR. HERNDON: I know all the county officers. I know [the victim's husband and father-in-law] I know Brother Brown down there, the pastor of the Assembly of God in Clewiston, and I believe that is Mrs. Brown. Well, I know those names there.
THE COURT: And I think you are well acquainted with one of the officers of the court here too, aren't you?[1]
MR. HERNDON: Yes, sir.
THE COURT: The fact that you know these people, would it cloud your judgment to the point where you could not make a free and independent fair and impartial judgment here?
MR. HERNDON: Well, Judge, I have talked personally with some of the people who are directly interested in the case. I have heard their side of it. I have heard other street talk.
THE COURT: Do you feel then that you would have acquired a fixed opinion on this thing?
MR. HERNDON: Well, as far as circumstantial evidence, yes, sir, I think so.
THE COURT: You have?
MR. HERNDON: Yes, sir.
The court dismissed Mr. Herndon from the panel with the following remark:
THE COURT: I am going to accept Mr. Herndon as my strike, so that will give you another strike.
The state objected to the court excusing Mr. Herndon. The objection was merely noted, however, the ruling was not changed *123 and the court nevertheless permitted Mr. Herndon to be sworn in as a member of the jury and he later was even elected its foreman.
It is true that the record does not show that counsel for defendant challenged Mr. Herndon for cause. However, the record does disclose that the defendant had one peremptory challenge that was not exercised. We are aware of the case of Withers v. State, Fla. 1958, 104 So.2d 725, wherein it was held to be necessary for a defendant to exhaust his peremptory challenges before asserting as reversible error that the trial judge denied a challenge for cause; further, that challenges to be effective must be timely exercised. See Ex parte Sullivan, 1944, 155 Fla. 111, 19 So.2d 611. Notwithstanding, under the particular circumstances here, and in light of other errors hereinafter discussed, the seating of this juror deprived the defendant of the right to have his cause tried fairly before an impartial jury.
The court here quickly realized, after having heard Mr. Herndon state that he had formed an opinion as to circumstantial evidence, that he could not serve as a fair and impartial juror. The court's ruling was eminently correct. Mr. Herndon should have been excused. The state's argument that had the court stricken Mr. Herndon, as it indicated, it would, in effect, give defendant an additional peremptory challenge is untenable. The striking of Mr. Herndon was for cause and defendant has unlimited challenges in this regard. The seating of Mr. Herndon as a member of the jury constituted error. In the case of Farese v. United States, 5th Cir.1970), 428 F.2d 178, the court held:
The Sixth Amendment guarantees that the accused shall enjoy the right to a trial by an impartial jury and shall be confronted with the witnesses and evidence against him. Certainly the definition of impartiality is not a static concept, but can be defined only in relation to specific facts and circumstances. Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959). The most general interpretation of a fair trial is that it be conducted before unprejudiced jurors under the superintendence of a judge who instructs them as to the law and advises them as to the facts... .
[428 F.2d, page 179-180].
Secondly, it is contended that cross-examination of the defendant exceeded permissible limits. The defendant took the witness stand and the following questions were propounded to him by the prosecutor:
[BY PROSECUTOR]:
Q Kind of laying low since you raped Wanda?
[DEFENSE COUNSEL]: Objection, Your Honor; I think that's not proper.
THE COURT: You asked him the question, he said no. It's proper cross-examination. Overrule the objection. Go ahead.
[BY PROSECUTOR]: (Cont.)
Q Answer the question, Mr. Carter.
A Would you repeat it again?
Q Are you just laying low since you raped Wanda?
A I didn't rape Wanda.
Q Let's get to the next part. Are you kind of laying low until the heat's off?
A You might could say that.
* * * * * *
Q Mr. Carter, other than the early morning that you raped Wanda ..., have you ever threatened to rape a woman?
A Nope.

*124 [DEFENSE COUNSEL]: I'll object to that. He's assuming something that I don't think is proper.
THE COURT: Overruled.
[Bracketed material supplied].
This line of questioning was highly improper and potentially prejudicial. In the state's case in chief, the prosecutor proffered the testimony of Mrs. Hill, see page 124 infra. At that time the prosecutor knew or should have known that Mrs. Hill would not testify that the defendant either raped or attempted to rape her. The timely objections of defendant's counsel to the above questions should have been sustained as the evidence was inadmissible. The prosecutor had presented a prima facie case against the defendant as charged. This is another example of the prosecutor going for the overkill and it constitutes error.
Next, we turn to the admissibility of the testimony of Mrs. Hill, a rebuttal witness for the state. As indicated above, before the state closed its case in chief, the prosecutor proffered her testimony under the rationale of the Williams Rule.[2] Mrs. Hill's proffered testimony follows:
[PROSECUTOR]: ... In this instance the State would show under prior similar facts that in early March of this year prior to the attack in this case the defendant, Calvin Carter, knowing Tim Hill and his wife, Helen, and seeing Tim Hill shooting pool in the Pub in Clewiston, Florida, drove some 30 plus miles to Devil's Garden and called upon Mrs. Helen Hill knowing her to be by herself except for her small children. At that time the defendant, Calvin Carter, according to Mrs. Hill's testimony made certain advances on her trying to get her to have sexual relations with him and suggesting it to her in no uncertain terms. Further, at one point in there he stated to her "What if I just make you do it, then you can't say that it was your fault," to which she responded "If you do so you will see what my husband will do about it." The defendant further in the course of this matter attempted to grab and kiss the witness, but after being bluntly and flatly rebuffed by her departed her residence. The State would show, Your Honor, this solely for the purpose of identification of the defendant showing a common scheme and a common intent in this and this is the sole purpose which the State would offer it.
Defense counsel objected to the proffer. The objection was sustained and the trial court ruled that the proffered evidence was remote in fact and would serve no useful purpose. We agree with this ruling. Clearly the testimony at that stage of the trial would only point to the defendant's propensity and bad character. It is a general rule in a criminal case that the state cannot introduce evidence attacking the character of the accused unless he has first put his good character in issue. See 13 Fla.Jur. 156; 20 Am.Jur. 303. On further cross-examination of the defendant by the prosecutor, the following occurred:
[BY PROSECUTOR]:
Q Mr. Carter, do you cheat on your wife? Do you go out and have intercourse with other women since you've been married?
[DEFENSE COUNSEL]: Objection, Your Honor.
THE COURT: It's proper cross-examination. You brought up the matter of his sexual compatibility at home.
[BY PROSECUTOR]: (Cont.)
Q Do you cheat on your wife, Mr. Carter?
A I have.

*125 Q Have you cheated on your wife recently, Mr. Carter?
A Not recently.
Q What is not recently?
A Since all this has come up.
* * * * * *
[BY PROSECUTOR]: (Cont.)
Q You've never asked a woman to to to bed with you and when she turned you down you never said, "what if I made you"?
A No.
Q And if somebody testified to that, they'd be lying, too, wouldn't they, Mr. Carter?
A They sure would.
After the defendant rested his case, the state called Mrs. Hill as a rebuttal witness. She testified as follows:
[BY PROSECUTOR]:
Q Do you recall whether or not Mr. Carter specifically asked you to go to bed with him?
A Yes, he did.
Q He asked you to go to bed with him that night?
A Yes.
Q What did you say to him?
A I told him no.
Q Did he accept this readily?
A No. He tried to convince me there was absolutely nothing wrong with it.
Q Did he use or attempt to use any force, Mrs. Hill, in convincing you?
A Just right before he left when we were at the door and he just took me by the arm and tried to pull me to him and I pulled away and said no. And he asked me to kiss him and I said no and then he said  he put one arm on each side  which you would have to see our trailer to know exactly what I was talking about, where the little partition was by the door  he put one arm on either side and just said, "What if I just went ahead and kiss (sic) you and you didn't let me. It wouldn't be your fault, you wouldn't be letting me kiss you." You know, just things like that.
Q Now, I believe you have already stated your husband was in town that night, Mrs. Hill.
A Yes, he was.
Q Did the Defendant, Mr. Carter, in any sense indicate that he knew that?
A Oh, yes; he told me he definitely knew my husband was in town.
As previously pointed out, the defendant testified that he had cheated on his wife; therefore, the testimony of Mrs. Hill that the defendant was cheating on his wife by making advances toward her cannot and should not have been admitted as rebuttal testimony. As a matter of fact, upon close examination, we find nothing in Mrs. Hill's testimony that would constitute rebuttal testimony. We therefore hold that her entire testimony was highly prejudicial and constitutes error.
Lastly, the prosecutor in his final argument to the jury stated:
This man is a liar. This man is a rapist. He lied to you, gentlemen. He sat here and told you he had no problems. He sat here and told you and then upon cross-examination he said yes, he had played around a little and then suddenly we found out it was more than playing around. He went down and wanted Mrs. Hill to go to bed with him, the wife of a friend. He went there and then he told her he knew her husband was in the *126 pub. I draw your attention to the similarity in the method of operation here. Either knowing or luring the husband away, the approach is made. No rape occurred in this case, but the method is the same, the intent is the same, and the identity of the perpetrator is the same.
The above-quoted remarks by the prosecutor in his final argument were confusing and misleading to the jury and regarded by this court to be highly inflammatory and prejudicial to the defendant. It was not, we submit, within the proper scope of closing argument and was outside the evidence adduced at trial. The prosecutor sought to convey the impression to the jury that the defendant had asked Mrs. Hill to go to bed with him and when she refused he was supposed to have said "What if I made you." The testimony of Mrs. Hill on this very vital point was clear and unequivocal, i.e. that the defendant had asked her to kiss him and when she refused he stated to her "What if I just went ahead and kiss (sic) you and you didn't let me." Mrs. Hill's testimony was not proper as Williams Rule testimony in the state's case in chief as the trial court had ruled. The defendant's identity had been positively established. The prosecution contended that the method of operation was similar. Not so. The defendant was charged with raping the victim in the middle of the night after her husband had been lured away from the home by a telephone call. On the other hand, the testimony of Mrs. Hill shows the defendant, who was known to her, came to her home in the early hours of the night, asked her to go to bed with him and, after being rejected, he left without further incident; the significant difference being that in this case the victim was raped; while, according to Mrs. Hill's testimony, the defendant attempted to kiss her. In the final analysis, the argument was grossly unfair, improper and highly prejudicial and constitutes error. In the case of Re Murchison, 1955, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942, the Supreme Court of the United States held:
... [O]ur system of law has always endeavored to prevent even the probability of unfairness.
[75 S.Ct. page 625, 99 L.Ed., page 946].
In Stewart v. State, Fla. 1951, 51 So.2d 494, the court cautioned prosecutors to refrain from inflammatory and abusive argument, directing trial judges to restrain and rebuke counsel from engaging in such tactics. The reason for inhibiting such conduct was stated in the following terms:
... Under our system of jurisprudence, prosecuting officers are clothed with quasi judicial powers and it is consonant with the oath they take to conduct a fair and impartial trial. The trial of one charged with crime is the last place to parade prejudicial emotions or exhibit punitive or vindictive exhibitions of temperament... .
[51 So.2d, page 495].
The prosecutor in his argument referred to the defendant as a rapist which reference may well have been interpreted by the jury as referring not to the charge on which he was being tried, but, rather, to ascribe guilt to the defendant for his alleged prior actions with Mrs. Hill. Brown v. State, Fla.App.3d 1973, 284 So.2d 453.
We have considered the remaining points raised by the defendant on this appeal and find each of them to be without merit.
Having determined that error did occur in this case, we now turn to a determination of whether that error prejudiced the substantial rights of the defendant.
While a defendant is not entitled to a perfect trial, he certainly is entitled to a fair and impartial one. See United States Constitution, amend. VI and XIV. We have endeavored to point out in this opinion several errors that occurred during the course of this trial, the accumulation of which improprieties was so great as to warrant a new trial. See Douglass v. State, 1938, 135 Fla. 199, 184 So. 756. Any *127 one of these errors standing and considered alone may not be cause for reversal, still when considered collectively and in relation to one another and upon review of the entire record, we are compelled to conclude that the defendant was denied his constitutional right to a fair and impartial trial before a fair and impartial jury. Accordingly, we
REVERSE and REMAND for new trial.
McNULTY, C.J., and BOARDMAN and SCHEB, JJ., concur.
NOTES
[1] Apparently the referred-to officer is the wife of Mr. Herndon, who was deputy clerk of the circuit court. Mr. Herndon worked as a property appraiser for the county tax assessor.
[2] Williams v. State, Fla. 1959, 110 So.2d 654.