433 So.2d 1273 (1983)
Isidro RODRIGUEZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 80-704.
District Court of Appeal of Florida, Third District.
June 28, 1983.
Bennett H. Brummer, Public Defender and Bruce A. Rosenthal, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen. and Jack B. Ludin, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and HENDRY and BASKIN, JJ.
BASKIN, Judge.
In a belated appeal Isidro Rodriguez challenges his convictions for first degree murder of Calixto Izquierdo and for display of a firearm during the commission of a felony. We agree that he was denied a fair trial; we reverse.
*1274 Mrs. Izquierdo, the victim's wife, her daughter, Gladys Gill, and her daughter's husband, Hector Gill, were following Mr. Izquierdo from a shopping center in another car when they saw two men emerge from a yellow Cadillac, shoot Mr. Izquierdo died at the hospital a short time later. By tracing the license plate on the Cadillac, the police learned that defendant Rodriguez owned the automobile. Mr. and Mrs. Gill identified Rodriguez as the murderer after examining photographs and observing a line-up, but Mrs. Izquierdo was unable to make an identification.
Rodriguez cites three points as grounds for reversal. First, he alleges error in the court's refusal to grant a mistrial following repeated emotional outbursts by the deceased's wife. Next, he claims tape recordings of his conversations with a cell mate should have been suppressed because they violated his right to counsel and because they contained evidence of other crimes with which he was not charged. As a third ground for reversal Rodriguez points to the trial court's alleged error in permitting a member of the state attorney's office to testify on behalf of the state. We agree that each of the points advanced in support of reversal would require this court to overturn the convictions if properly preserved for review.
We consider first the trial court's denial of the motion to suppress. After tracing the license tag of the Cadillac, Detective Roberson obtained a warrant for Rodriguez' arrest. He discovered that Rodriguez had already been arrested in New Jersey on other unconnected charges. Detective Roberson interviewed Rodriguez in the New Jersey jail. Soon after the interview, Rodriguez told a cell mate, Dominick Romeo, that he had killed a man who had stolen marijuana from him. Rodriguez was apparently referring to the death of Izquierdo. According to the state, Rodriguez offered to pay Romeo to testify as an alibi witness. When Romeo informed police about the information he had obtained, he was fitted with a body bug by Florida police and placed in a cell with Rodriguez. Romeo told Rodriguez to write an alibi statement for him to memorize. At trial, the state sought to introduce the tapes of these conversations to substantiate Romeo's testimony that Rodriguez had manufactured an alibi and as proof that Rodriguez had admitted killing Izquierdo. The court admitted the tapes.
Romeo testified at Rodriguez' trial. When, in the course of questioning, the state elicited a response from Romeo indicating that Rodriguez had been involved in another murder, Rodriguez requested a mistrial. Countering Rodriguez' motion for mistrial, the state pointed out that the recorded conversation taped by means of the body bug also referred to another murder. The state contended that since the court had denied the motion to suppress, the jury would hear the reference to another murder when the tape was played and thus mistrial was not appropriate. The trial court accepted the state's argument and denied the motion for mistrial. We disagree with the court's ruling on the established authority of Drake v. State, 400 So.2d 1217 (Fla. 1981); Whitted v. State, 362 So.2d 668 (Fla. 1978); Williams v. State, 117 So.2d 473 (Fla. 1960); Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959); Macklin v. State, 395 So.2d 1219 (Fla. 3d DCA 1981) and Matthews v. State, 366 So.2d 170 (Fla. 3d DCA 1979). The reference was irrelevant to the crime for which Rodriguez was on trial.
On appeal Rodriguez objects to the use of the tapes as a denial of his right to counsel; however, while that ground was presented during the hearing on the motion to suppress, objection on that ground was not renewed at trial. As a result, the state contends that the objection concerning the denial of counsel has therefore been waived for appellate review. The substance of Rodriguez' argument rests upon prohibitions directed to the use of statements made to a cell mate who acted as a government informant. He asserts the standards enunciated *1275 in United States v. Henry[*], 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980) and Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) apply despite the fact that no indictment had been filed against him at the time the recordings were made. See Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Rodriguez contends that his right to counsel arose when investigation focused upon him. Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); DeAngelo v. State, 403 So.2d 573 (Fla. 4th DCA 1981). See also State v. Webb, 625 S.W.2d 259 (Tenn. 1981) (adversarial process had begun when arrest warrant was issued); State v. Mitchell, 593 S.W.2d 280 (Tenn. 1980) (bail hearing start of adversarial process). There is no question that limitations on the use of Rodriguez' conversation with Romeo such as the court employed in Barfield v. State, 402 So.2d 377 (Fla. 1981) were absent from these proceedings. Furthermore, no in camera inspection of the recordings to eliminate prejudicial and irrelevant material took place. Gomien v. State, 172 So.2d 511 (Fla. 3d DCA 1965). The state, however, is correct in pointing out that Rodriguez was required to renew pretrial objections to contested evidence on each challenged ground at the time the tapes were offered for admission at trial, and that objecting on other grounds did not preserve the issue. Fraterrigo v. State, 151 Fla. 634, 10 So.2d 361 (Fla. 1942); Robertson v. State, 94 Fla. 770, 114 So. 534 (Fla. 1927); Witt v. State, 388 So.2d 1 (Fla. 4th DCA 1980); Roban v. State, 384 So.2d 683 (Fla. 4th DCA 1980); Kiddy v. State, 378 So.2d 1332 (Fla. 4th DCA 1980); Stanley v. State, 357 So.2d 1031 (Fla. 3d DCA 1978); Jones v. State, 360 So.2d 1293 (Fla. 3d DCA 1978); Tennant v. State, 205 So.2d 324 (Fla. 1st DCA 1967). See Castor v. State, 365 So.2d 701 (Fla. 1978); Clark v. State, 363 So.2d 331 (Fla. 1978); Mead v. State, 381 So.2d 743 (Fla. 3d DCA 1980); Atkinson v. State, 378 So.2d 324 (Fla. 3d DCA 1980); Hamilton v. State, 152 So.2d 793 (Fla. 2d DCA 1963); Jackson v. State, 107 So.2d 247 (Fla. 2d DCA 1958). His failure precludes relief on this issue.
Next, Rodriguez presents a question which poses little difficulty for us in deciding the propriety of the state's conduct. It is clearly improper under the Code of Professional Responsibility for the office of the state attorney to call a member of its legal staff as an expert witness for the purpose of buttressing the credibility of one of its witnesses. Fla.Bar Code Prof.Resp. D.R. 5-102. Thus, the state's presentation of the testimony of a member of its office to give an expert opinion as to whether the alibi witness could be prosecuted constituted error.
D.R. 5-102 provides:
(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101(B)(1) through (4).
D.R. 5-101(B)(1) through (4) provides:
(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:
(1) If the testimony will relate solely to an uncontested matter.
(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

*1276 (4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.
The state's testimony fell within none of the exceptions and should not have been permitted.
Turning to the final challenge we agree that Mrs. Izquierdo's emotional outbursts, while understandable, were extremely prejudicial and created an atmosphere in which appellant could not receive a fair trial. Mrs. Izquierdo shouted epithets and interspersed her testimony with impassioned statements evidencing her hostility toward Rodriguez. Her conduct necessarily engendered sympathy for her plight, and antagonism for Rodriguez, depriving him of a fair trial. See Stewart v. State, 51 So.2d 494 (Fla. 1951); Carter v. State, 332 So.2d 120 (Fla. 2d DCA 1976); Tribue v. State, 106 So.2d 630 (Fla. 2d DCA 1958).
For these reasons we reverse the convictions and remand for a new trial.
NOTES
[*] The trial court did not have the benefit of Henry when it ruled upon the motion to suppress.