455 So.2d 1050 (1984)
Jose CLAUSELL, Petitioner,
v.
The STATE of Florida, Respondent.
No. 83-2522.
District Court of Appeal of Florida, Third District.
March 13, 1984.
On Motion for Rehearing September 18, 1984.
*1051 Pelzner, Schwedock, Finkelstein & Klausner and Robert D. Klausner and Lori E. Barrist, Miami, for petitioner.
Jim Smith, Atty. Gen., and Michael J. Neimand, Asst. Atty. Gen., for respondent.
Before HUBBART, NESBITT and DANIEL S. PEARSON, JJ.
On Motion for Rehearing En Banc September 18, 1984.
DANIEL S. PEARSON, Judge.
By this petition for writ of certiorari, Jose Clausell asks us to quash an order of the trial court which refused to disqualify the office of the State Attorney from further participation in the prosecution of Clausell for perjury. Clausell contends that because two Assistant State Attorneys will be witnesses for the prosecution, all other members of the State Attorney's office are disqualified from prosecuting him, and such task must necessarily be assigned to a special prosecutor who has no affiliation with the State Attorney's office for the Eleventh Judicial Circuit.
Clausell is being prosecuted for perjury in violation of Section 837.02, Florida Statutes (1981). The information alleges that Clausell made material false statements under oath during an official proceeding to one Jonathan Blecher, an Assistant State Attorney. The names of Blecher and Anne Marie Farrar, another Assistant State Attorney before whom Clausell apparently retracted the earlier statements given to Blecher, appear on the State's list of prospective witnesses. The Assistant State Attorney now assigned to prosecute the case is, of course, neither Blecher nor Farrar.
It is clear, and Clausell does not contend otherwise, that there is nothing condemnable about a member of the prosecutor's office who is not prosecuting the case testifying as a prosecution witness. Without exception, courts have, explicitly and implicitly, rejected the contention that because of the prestige which attaches to the prosecutor's office, to permit a prosecutor to testify would unfairly prejudice the defendant. United States v. Cerone, 452 F.2d 274 (7th Cir.1971), cert. denied, 405 U.S. 964, 92 S.Ct. 1168, 31 L.Ed.2d 240 (1972) (explicitly rejecting contention that United States Attorney, who was not prosecuting the case, should not have been allowed to testify because it was prejudicial to the defendants due to the prestige of witness's office); United States v. Callanan, 450 F.2d 145 (4th Cir.1971) (same); People v. Mann, 27 Ill.2d 135, 188 N.E.2d 665, cert. denied, 374 U.S. 855, 83 S.Ct. 1923, 10 L.Ed.2d 1075 (1963) (same, implicit); Lukas v. State, 194 Wis. 387, 216 N.W. 483 (1927) (same, implicit).[1] Clausell suggests, however, that this otherwise admissible testimony cannot be elicited by any other Assistant State Attorney from the same office as the witnesses. Since, as we have said, there is no cognizable prejudice to the defendant from the fact of these Assistant State Attorneys testifying, in order to prevail on his motion to disqualify all other members of the State Attorney's office, the defendant must point to some prejudice to him which results from the office's participation in his prosecution. See United States v. Hubbard, 493 F. Supp. 206 (D.D.C. 1979), affirmed sub nom. United States v. Heldt, 668 F.2d 1238 (D.C. Cir.1981), cert. denied sub nom. Hubbard v. United States, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982). The defendant has pointed to none.[2]
*1052 We reject Clausell's argument that it is unnecessary for him to show prejudice and that he is entitled to have the State Attorney's office disqualified because its further participation in his prosecution would constitute a breach of the Florida Bar Code of Professional Responsibility. His thesis is that the office of the State Attorney is a law firm, and every assistant within the office is a lawyer in the firm, so as to require the automatic disqualification of the firm when, as here, any of its members are to be witnesses in a case being prosecuted by the firm.
First, without any showing that a prosecutor's violation of the Code of Professional Responsibility will or has prejudiced him, a defendant has no right to enforce the Code and is not intended to be an incidental beneficiary of any violation of its provisions. See State v. Murray, 443 So.2d 955 (Fla. 1984) (prosecutorial misconduct in violation of the Code of Professional Responsibility is the proper subject of bar disciplinary action and will not warrant reversal of a conviction unless the misconduct can be said to have prejudiced the defendant's right to a fair trial); State v. Del Gaudio, 445 So.2d 605 (Fla. 3d DCA 1984) (sanction of dismissal of charges for prosecutor's misconduct in failing to make discovery inappropriate in absence of irreparable prejudice to defendant). Cf. Molina v. State, 447 So.2d 253 (Fla. 3d DCA 1983) (where prosecutorial misconduct prejudiced defendant, conviction reversed and matters of misconduct referred to the bar for grievance proceedings).[3]
We do not overlook this court's recent decision in Rodriguez v. State, 433 So.2d 1273 (Fla. 3d DCA 1983). There the court, reversing the defendant's conviction, held that "the State's presentation of the testimony of a member of its office to give an expert opinion as to whether the alibi witness could be prosecuted constituted error." 433 So.2d at 1275. Since, as we have said, it is clear that in the absence of prejudice to the defendant, a prosecutor's violation of the Code of Professional Responsibility is not a ground for reversal, see State v. Murray, 443 So.2d 955, Rodriguez can only be read to mean that the testimony presented was inadmissible and prejudicial to the defendant without regard to whether it was presented by a member of the State Attorney's office or a person appointed in the stead of the State Attorney. Therefore, the ensuing discussion in Rodriguez concerning the impropriety of the prosecuting attorney calling a member of his own *1053 office as a witness is dicta which we are free to disregard.[4]
Second, we perceive no violation of the Code of Professional Responsibility when an Assistant State Attorney appears as a witness for the State in a case being prosecuted by another member of the State Attorney's office.
Concededly, the Code of Professional Responsibility mandates that "[a] lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that ... a lawyer in his firm ought to be called as a witness." Fla.Bar Code Prof.Resp. D.R. 5-101(B). The Code provides that, under like circumstances, the lawyer's law firm shall not continue with the representation. Fla.Bar Code Prof. Resp.D.R. 5-102(A).[5]
In our view, the State Attorney's office is not a law firm, and an Assistant State Attorney is not a lawyer in the firm for the purposes of D.R. 5-101(B) and D.R. 5-102(A). These sections, as do other sections in the Code of Professional Responsibility, clearly indicate that these expressions were intended to refer to law firms undertaking employment for remuneration and to the attorneys in such firms. For example, D.R. 2-110(A)(3) requires that a withdrawing attorney refund unearned fees; D.R. 2-102 is a regulatory provision concerning the use of the term "firm" in professional settings; D.R. 3-102 regulates the sharing of legal fees and payment of the same to non-lawyers; and D.R. 9-102(A)(2) regulates the use of clients' funds. The definitional section merely states that a law firm "includes a professional legal corporation." We believe that had it been intended that "law firm" should include a multi-assistant State Attorney's office, that inclusion would have been clearly expressed. People ex rel. Younger v. Superior Court, 86 Cal. App.3d 180, 150 Cal. Rptr. 156 (4th Dist. 1978).
That the word "firm" as used in D.R. 5-101(B) and D.R. 5-102(A) was intended to refer to a law firm engaged in practice for remuneration is further apparent from Formal Opinion 339 of the American Bar Association's Committee on Ethics and Professional Responsibility (January 31, 1975). In respect to the requirement that a "firm" and all lawyers in the firm withdraw when a lawyer in the firm intends to testify on behalf of the client, Formal Opinion 339 concludes:
"Because a trial advocate clearly possesses such [a financial] interest, his testimony, or that of a lawyer in his firm, is properly subject to inquiry based on such interest, perhaps including elements of his fee arrangement in some instances. Thus, the weight and credibility of testimony needed by the client may be discounted and in some cases the effect will be detrimental to the client's cause."
See also E.C. 5-9.
Thus, faced with the identical question which is now before us, the court in People ex rel. Younger v. Superior Court, 86 Cal. App.3d 180, 150 Cal. Rptr. 156, after a thorough review of California's Code of Professional Responsibility, which in all material respects is the same as Florida's Code, concluded:
"The reasons advanced in support of rule 2-111(A)(4) [Fla.D.R. 5-101(B) and D.R. 5-102(A)] and the authoritative discussions of the rule and its reasons previously cited ... reveal that the balance thus drawn is based on certain fundamental assumptions: that there are available a number of competent, qualified attorneys who are unrelated to the attorney-witness and who are willing to undertake the client's case ...; that, consequently, the interest of the client in representation by the attorney of choice implicates primarily avoidance of inconvenience and duplicative expense ...; that the attorney's interest in continuing to *1054 represent the client is mostly or wholly financial in nature ...; that a trial advocate has or appears to have an interest in the outcome of the case, either financial as a result of his fee arrangement or expectation of representing the client in the future, or a partisan interest resulting from his zeal as an advocate ..., and that an attorney-witness whose law firm represents the client at trial will or will be presumed to continue to have an interest in the outcome of the case, either financial as a result of the fee arrangements and arrangement for his compensation by the firm, or secondarily perhaps, some residual partisanship resulting from his relationship with the law firm notwithstanding he is not acting as the advocate personally... . However valid these assumptions may be in the case of an attorney or law firm engaged in practice for remuneration and the normal attorney-client relationship, they have virtually no validity in the case of the multi-deputy prosecutorial office of a district attorney. The prosecutorial office of an elected district attorney and the relationship between the district attorney and his sole client, the People, are fundamentally and decisively different from a law firm and the ordinary attorney-client relationship."

86 Cal. App.3d at 203-04, 150 Cal. Rptr. 156 (citations omitted) (emphasis supplied).
Similarly, in United States v. Hubbard, 493 F. Supp. at 208, the court stated:
"If any member of a law firm has an interest in the outcome of a case, the entire firm is disqualified. See ABA Opinion 296 (1959). However, this rule does not extend to encompass an Office of a United States Attorney. A United States Attorney's Office is unique in that it does not represent ordinary parties but the sovereign whose obligation is to govern impartially. See Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629 [633], 79 L.Ed. 1314 (1934). Furthermore, the members of an Office of a United States Attorney have no interest in the success of the litigation of their associates as do members of a private firm. Therefore, the fact that one member of the Office may have a disqualifying interest in the case does not preclude the entire Office from handling the case."
This fundamental and decisive difference between the public prosecutor and the ordinary advocate is expressly recognized by the Code of Professional Responsibility, see E.C. 7-13; D.R. 7-103; by the ABA Model Rules of Professional Conduct, see Rule 3.8, Special Responsibilities of A Prosecutor; and has long been recognized by our case law, see Smith v. State, 95 So.2d 525 (Fla. 1957); Peterson v. State, 376 So.2d 1230 (Fla. 4th DCA 1979), cert. denied, 386 So.2d 642 (1980); Frazier v. State, 294 So.2d 691 (Fla. 1st DCA 1974), cert. denied, 307 So.2d 185 (1975).
Nor does the decision of our sister court in Fitzpatrick v. Smith, 432 So.2d 89 (Fla. 5th DCA 1983), alter our view. In Fitzpatrick, the defendant's motion to disqualify the State Attorney's office was based on the fact that the defendant had consulted with an attorney, one Kimball, concerning the charges against him, and subsequently, while the charges were still pending against the defendant, Kimball became an Assistant State Attorney in the office whose responsibility it was to prosecute the defendant. The defendant claimed that the threat of disclosure of his privileged and confidential communications to Kimball was sufficient grounds to disqualify the State Attorney's office. The Fifth District Court of Appeal, finding a real danger of prejudice to the defense, agreed. In so deciding, the court, relying upon cases holding that a public defender's office is a law firm within the meaning of the Code of Professional Responsibility, determined that a State Attorney's office is a firm.[6]
*1055 It is obvious that whether the State Attorney's office may be considered a law firm for the purpose of disqualifying its members when one of its number has previously represented the defendant in the very matter being prosecuted is irrelevant to the question of whether the State Attorney's office may be considered a law firm under D.R. 5-101(B) and D.R. 5-102(A) for the purpose of disqualifying its members when one of its number is to testify as a witness for the State. The rationale of Fitzpatrick is the real danger of prejudice to the defendant posed by the possible divulgence of privileged information and, implicitly, the unseemliness of the defendant being prosecuted by an office on a charge he had discussed with his former attorney, now a member of that office. No such prejudice or unseemliness exists here.
We therefore conclude that the trial court did not depart from the essential requirements of the law  indeed, adhered to those requirements  when it denied the petitioner's motion to disqualify the State Attorney's office from further participation in the prosecution of the petitioner. The trial court's decision was eminently correct in that the petitioner failed to show that he would be prejudiced by the State Attorney's office's continued participation in the prosecution. The petitioner's reliance on Disciplinary Rules 5-101(B) and 5-102(A) of the Florida Bar Code of Professional Responsibility as grounds for disqualification is misplaced, since, absent a showing that a violation of these rules will prejudice him the petitioner has no private right to seek their enforcement, and, moreover, the State Attorney's office is not a law firm within the meaning of the cited rules.
Accordingly, the petition for writ of certiorari is
Denied.

ON MOTION FOR REHEARING EN BANC
Before SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, BASKIN, DANIEL S. PEARSON, FERGUSON and JORGENSON, JJ.
PER CURIAM.
Having determined that the panel decision issued in this case on March 13, 1984, is in conflict on an identical point of law with the decision of this court in Rodriguez v. State, 433 So.2d 1273 (Fla. 3d DCA 1983), this court granted the petitioner's motion for rehearing en banc. Upon en banc consideration of the case by eight active sitting members of the court, three members (Judges Nesbitt, Daniel S. Pearson and Jorgenson) voted to approve the panel decision and reject Rodriguez; four members (Chief Judge Schwartz and Judges Barkdull, Baskin and Ferguson) voted to disapprove the panel decision and approve Rodriguez: and one member (Judge Hubbart), although disagreeing with the rule announced in Rodriguez, voted to disapprove the panel decision in Clausell solely because of his view that Rodriguez must be adhered to on the ground of stare decisis. Accordingly, the petition for writ of certiorari is granted, and the order of the trial court refusing to disqualify the office of the State Attorney from further participation in the prosecution of Clausell for perjury is quashed.
The divergent views of the members of the court on the merits of the issue suggest to us that we certify the following questions to the Florida Supreme Court for resolution. Cf. In re Rule 9.331, Determination of Causes By A District Court of Appeal En Banc, Florida Rules of Appellate Procedure, 416 So.2d 1127, 1129 (Fla. 1982).
1. Is it a breach of the Code of Professional Responsibility of The Florida Bar for a State Attorney or any Assistance State Attorney in the office to continue to act as the prosecutor in a criminal case when it is his or her intention to call another Assistant State Attorney in the same office to testify at the trial of the case as to a material matter?

*1056 2. If it is a breach of the Code of Professional Responsibility of The Florida Bar for a State Attorney or any Assistant State Attorney in the office to continue to act as the prosecutor in a criminal case when it is his or her intention to call another Assistant State Attorney in the same office to testify at the trial of the case as to a material matter, is disqualification of the State Attorney and any Assistant State Attorney in the same office from prosecuting the case required whether or not prejudice to the defendant can be demonstrated?
Certiorari granted; questions certified.
FERGUSON, Judge (specially concurring to certify the question).
This is a single issue case so certification of two questions is unnecessary. The certified question should be simply whether disqualification of the office of the state attorney for the district is required where the state attorney or one of the assistants is obligated to call another assistant in the same office to testify at trial as to a material matter. To suggest, as does the second question, that a criminal defendant should be required to demonstrate actual prejudice, is to load the question. Neither does the case hinge solely on an interpretation of the Code of Professional Responsibility.
That an assistant state attorney is the key witness in the effort of the state attorney to obtain a conviction is potentially prejudicial to the accused. But the same could be said as to any other key prosecution witness. So, is there some other kind of prejudice which an accused must establish where the key witness happens to share an office with the prosecutor? If so, what is it and how is it proved?
The question which has to be decided ultimately, as a matter of policy, is whether the office of the state attorney is so disinterested in the outcome of a criminal prosecution that unfair advantage will not be presumed where a member of the same office appears as the state's main witness.
BASKIN, J., concurs.
HUBBART, Judge (concurring).
I concur in the court's decision to rehear en banc this case under Fla.R.App.P. 9.331 and to the court's disposition of the case on the merits. I also agree that the case should be certified for final resolution to the Florida Supreme Court because of the great public importance of the questions presented. Art. V, § 3(b)(4), Fla. Const. I write separately, however, because the case raises an important issue as to this court's administration of the en banc rule. Fla.R.App.P. 9.331.
First, it seems indisputable that we have jurisdiction to rehear this case en banc under Fla.R.App.P. 9.331. Although I was a member of the panel in the instant case and believe that Judge Pearson has written an able opinion on the issue presented  indeed, I think his analysis of what the law should be in this area is very persuasive  still, I think the effort to distinguish our contrary precedent in Rodriguez v. State, 433 So.2d 1273 (Fla. 3d DCA 1983), is unsuccessful. Rodriguez announces a rule of law that Fla. Bar Code Prof.Resp.D.R. 5-101(B), 5-102 apply to the state attorney's office when that office seeks to call an assistant state attorney in its own office as a witness at trial. The panel opinion announces a contrary rule of law that "the State Attorney's office is not a law firm, and an Assistant State Attorney is not a lawyer in the firm for the purposes of D.R. 5-101(B) and D.R. 5-102(A)," (slip opinion at 1053), when the state attorney's office seeks to call an assistant state attorney in its own office as a witness at trial. This being so, there is a clear intra-district conflict of decisions shown sufficient to invoke our jurisdiction to rehear this case en banc under Fla.R.App.P. 9.331, as the panel opinion announces a rule of law in conflict with a rule of law announced in Rodriguez, a showing which we have held sufficient to invoke our en banc jurisdiction. Schreiber v. Chase Federal Savings & Loan Ass'n, *1057 422 So.2d 911 (Fla. 3d DCA 1982) (en banc) (Nesbitt, J., dissenting, opinion of court on en banc issue), aff'd in part, rejected in part and remanded (Fla. 1984) (case no. 63,017, opinion filed July 26, 1984); Finney v. State, 420 So.2d 639 (Fla. 3d DCA 1982) (en banc).
Second, and most importantly, I think that whenever we grant a hearing or rehearing en banc under Fla.R.App.P. 9.331, we should give stare decisis deference  although not slavish adherence  to the prior decision with which the instant decision stands in conflict or is non-uniform. Otherwise every prior panel decision ever rendered in our twenty-seven-year history can with impunity be overruled by this court sitting en banc whenever we disagree with a prior panel decision  a result which I think no one wants as it would create great instability in our precedents and undermine the authority of our panel opinions generally. Moreover, such a result would defeat the entire purpose behind Fla.R.App.P. 9.331 which "is designed to help the district courts avoid conflict, assure harmonious decisions within the courts' geographic boundaries, and develop predictability of the law within their jurisdiction." Chase Federal Savings & Loan Ass'n v. Schreiber (Fla. 1984) (case no. 63,017, opinion filed July 26, 1984) (9 FLW 313).
Only in rare and unusual cases where the prior precedent deserves to be overruled because it conflicts with controlling Florida Supreme Court or United States Supreme Court precedent, has been superseded by statute, is so at odds with the established law as to be regarded as an aberrant precedent, or otherwise qualifies as an exception to the doctrine of stare decisis, see Joseph v. State, 447 So.2d 243, 249-51 (Fla. 3d DCA 1983) (en banc) (Hubbart, J., dissenting), and authorities collected, do I think we should ever recede from a prior panel opinion. Not only is this sound stare decisis law, I think this treatment of our prior precedents accords with the salutory purpose behind Fla.R.App.P. 9.331 which is to promote harmony and predictability in our decisions and to avoid instability in our decision-making process.
For the reasons stated by Judge Pearson in the panel opinion in the instant case, I do not agree with Rodriguez, the prior panel opinion herein, and would not have joined that opinion had I been a member of the panel. However, I regard this personal consideration as an insufficient legal basis for refusing to follow Rodriguez; indeed, there would be little stability in our law if individual judges could properly arrogate to themselves the right to refuse to follow any precedent which was not to their liking. Setting aside such personal considerations and applying more objective criteria, the Rodriguez decision, in my view, is not an aberrant opinion, does not conflict with prior Florida precedent or statute, qualifies for no exception to the doctrine of stare decisis, and otherwise has a reasonable legal basis. I, therefore, think we should adhere to Rodriguez as a stare decisis matter so as to promote harmony and stability among our precedents.
It goes without saying, however, that the Florida Supreme Court, upon review of this case, will not be so bound by Rodriguez, as it is not one of its prior decisions. This being so, I would urge the Court upon its review to adopt Judge Pearson's analysis of this case as contained in the panel opinion herein.
NOTES
[1] On the other hand, but inapposite here, where the person actually prosecuting the case appears as a witness in the case, courts have uniformly condemned the practice on the theory that in such an instance, "a jury is naturally apt to give to the testimony of the prosecuting attorney himself much more weight than it would accord to the ordinary witness." Shargaa v. State, 102 So.2d 809, 813 (Fla. 1958) (condemning practice, but affirming conviction where prosecutor's testimony was limited to a matter not in material dispute); Robinson v. State, 32 F.2d 505 (8th Cir.1929) (condemning practice and reversing on other grounds); People v. Spencer, 182 Colo. 189, 512 P.2d 260 (1973) (condemning practice and reversing conviction where prosecutor's testimony of sufficient consequence).
[2] In United States v. Hubbard, 493 F. Supp. 206, the court rejected the defendant's claim that the United States Attorney's Office should be disqualified where the indictment charged the defendants with burglaries and thefts from an office of an Assistant United States Attorney in that district who was not in any way involved in the prosecution of the case. The court found that none of the government attorneys had any emotional stake in the outcome that could disturb his exercise of impartial judgment and thus deprive the defendant of a fair trial. In so doing, the court distinguished People v. Superior Court, 19 Cal.3d 255, 137 Cal. Rptr. 476, 561 P.2d 1164 (1977), where the district attorney's office was held to be properly disqualified from prosecuting a homicide where the victim's mother was a clerk in the district attorney's office and stood to gain custody of her deceased son's child upon the conviction of the defendant, the victim's wife. The California court held on the circumstances presented, "[T]he prosecutor might at least appear to have an emotional stake in the case of the sort that could disturb his exercise of impartial judgment... ." 137 Cal. Rptr. at 486, 561 P.2d at 1174.
[3] The Model Rules of Professional Conduct adopted by the American Bar Association on August 2, 1983, make clear that violations are the concern of the violator and the appropriate disciplinary agency and do not create a procedural weapon in other litigants.

"Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty."
[4] We reiterate that in the present case, there is no contention that the testimony of the assistants is inadmissible. The contention is that such testimony should not be elicited by a member of the same office as the witness.
[5] These rules contain exceptions which are not pertinent here.
[6] The conclusion that a State Attorney's office which represents a single client is a law firm does not follow from the conclusion that a public defender's office which represents multiple clients with the potential for conflict is a law firm. In the factual context of Fitzpatrick, however, where there existed the spectre of divided loyalties, the problem of conflict existed.