

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00222-CR

———————————————

ANSHAWN PHIFFER, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 16th District Court
Denton County, Texas
Trial Court No. F22-1006-16

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Wallach

A jury convicted Appellant Anshawn Phiffer of murder and assessed his punishment at 55 years' confinement. *See* Tex. Penal Code Ann. § 19.02(b). On appeal, Phiffer argues in two points that the trial court abused its discretion by (1) denying his request for a mistrial after an outburst from a person in the gallery occurred in response to the State's introduction of photographs of the deceased victim and (2) denying his request during the trial's punishment phase to instruct the jury to disregard testimony showing that Denton police officers knew where he lived because of his connection to a prior burglary investigation. We will affirm.

## I. BACKGROUND

Shortly after 2:00 a.m. on March 19, 2022, local police officers heard the sound of rapid gunfire near the Fry Street bar district in Denton, Texas. After heading toward the area where they had heard the shots, the officers found the victim, later identified as Curtis Stevenson, lying flat on his back in a brick alcove behind a smoke shop. Stevenson had multiple gunshot wounds; was bleeding from his eyes, nose, and mouth; and appeared to be deceased. The shooter was not initially located, but a witness told the officers that he had seen a man run from the scene.

After interviewing on-scene witnesses and reviewing surveillance footage, officers identified Phiffer as a suspect and arrested him. Following his arrest, Phiffer waived his *Miranda* rights and agreed to talk to the police. But when the officers asked

Phiffer to give them his version of events from the night of the murder, he gave them varying, confusing, and conflicting accounts.

Ultimately, Phiffer was indicted for murder, and a jury trial was held in August 2023. Rejecting his claim that he had shot Stevenson in self-defense, the jury found Phiffer guilty as charged in the indictment.

During the trial's punishment phase, the jury heard evidence that the local police were familiar with Phiffer based on his prior alleged offenses, including evading arrest by vehicle and possession of illegal narcotics, and his connection to a previous burglary investigation during which officers had conducted a warrant-based search of Phiffer's home and discovered numerous weapons, ammunition, marijuana, and methamphetamine. The State also presented evidence showing that while conducting a warrant-based search of Phiffer's vehicle following his arrest for Stevenson's murder, officers had found additional guns, ammunition, drugs, and stolen property tied to the previously investigated burglaries. In addition, the jury viewed social media posts depicting Phiffer with guns and large amounts of cash and smoking marijuana.

Rejecting Phiffer's sudden-passion claim, the jury assessed his punishment at 55 years' confinement. The trial court sentenced him accordingly. This appeal followed.

## II. DISCUSSION

### A. <u>Point One</u>: The Trial Court Did Not Abuse Its Discretion by Denying Phiffer's Request for a Mistrial

In his first point, Phiffer contends that the trial court abused its discretion by denying his request for a mistrial after a person in the gallery became audibly upset when the State displayed photographs of Stevenson intubated at the hospital shortly after the shooting. We disagree.

#### 1. The Outburst

The outburst occurred during the second day of trial when the State published four photographs of Stevenson at the hospital shortly after the shooting. After removing the jury from the courtroom, the trial court described the outburst for the record, stating "that just as the State displayed [the photographs] . . . an individual . . . started crying and [became] audibly upset in front of the jury and left the courtroom."

Outside of the jury's presence, the prosecutor informed the trial court that she had previously warned Stevenson's family members that the evidence to be presented on this particular day might be hard for them to see and had admonished them that emotional displays or disruptive outbursts would not be tolerated by the court. Phiffer then requested a mistrial, which the trial court denied. However, at Phiffer's request, the trial court instructed the jury to disregard "any . . . goings on in the courtroom"

4

and to decide the case solely based on the evidence that they "observe and hear from the witness stand" and the documentary evidence offered by the parties.

## 2. Applicable Law and Standard of Review

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Archie v. State*, 340 S.W.3d 734, 738–39 (Tex. Crim. App. 2011); *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010). Under this standard, we must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Coble*, 330 S.W.3d at 292; *Marchbanks v. State*, 341 S.W.3d 559, 561 (Tex. App.—Fort Worth 2011, no pet.). "[A]n outburst from a bystander or witness 'which interferes with the normal proceedings of a trial will not result in reversible error unless the defendant shows that a reasonable probability [exists] that the conduct interfered with the jury's verdict.'" *Coble*, 330 S.W.3d at 292 (quoting *Stahl v. State*, 749 S.W.2d 826, 829 (Tex. Crim. App. 1988)). "In the context of such outbursts, the trial judge's instructions to disregard are generally considered sufficient to cure the impropriety because it is presumed that the jury will follow those instructions." *Id.* Thus, a mistrial is necessary only in extreme circumstances when the prejudice caused by the outburst is incurable—that is, when it is so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant. *See Archie*, 340 S.W.3d at 739; *Whitney v. State*, 396 S.W.3d 696, 703–04 (Tex. App.—Fort Worth 2013, pet. ref'd) (mem. op.); *see also Turner v. State*, 570 S.W.3d 250, 268

(Tex. Crim. App. 2018) ("A mistrial is an appropriate remedy in extreme cases for a narrow class of highly prejudicial and incurable errors.").

### 3. Analysis

Here, Phiffer has not met his burden to show the existence of a reasonable probability that the outburst interfered with the jury's verdict.[1] *See Coble*, 330 S.W.3d at 292. The trial court instructed the jury to disregard the outburst and to decide the case solely based on the evidence, and Phiffer has not directed us to anything in the record that would rebut the presumption that the jury followed these instructions. *See id.* Indeed, given that (1) the outburst came from a bystander, not a testifying witness; (2) the bystander immediately left the courtroom; and (3) the State did not reference the outburst in front of the jury at any point during trial, we cannot conclude that the outburst was so inflammatory that it likely prevented the jury from fairly examining the evidence in reaching its verdict. *Cf. Gamboa*, 296 S.W.3d at 580 (rejecting appellant's argument that the trial court erred by denying his motion for a mistrial after a family member of the victim shouted, "You did this for 200 dollars?" during trial because "[n]othing in the record suggest[ed] that the outburst was of such a

---

[1] In his brief, Phiffer asserts that "[b]y trying to [e]nsure that [he] would not be prejudiced by [the] outburst[], [he] met his burden of proof that he wanted to prevent any possible prejudice." But Phiffer's burden is not merely to show his subjective desire to prevent possible prejudice; rather, it is to show that there is a reasonable probability that the outburst actually prejudiced him by preventing the jury from fairly examining the evidence in arriving at its verdict. *See Coble*, 330 S.W.3d at 292; *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009).

nature that the jury could not ignore it and fairly examine the evidence in arriving at a verdict").

Phiffer relies on both *Stahl*, 749 S.W.2d at 826–32, and *Cooper v. State*, 163 S.W. 424 (Tex. Crim. App. 1914), to support his contention that the trial court erred by denying his request for a mistrial, but both of these cases are distinguishable.[2] As the Court of Criminal Appeals has pointed out, its decision to reverse in *Stahl* was largely based on "prosecutorial misconduct, not merely the witness's emotional outburst." *Coble*, 330 S.W.3d at 292. In *Stahl*, the prosecutor called the victim's mother to the stand despite knowing that she was prone to emotional outbursts and asked her to identify a picture of her dead son. *Stahl*, 749 S.W.2d at 828. When an emotional outburst predictably ensued, the trial court instructed the jury to disregard, but the prosecutor "exacerbate[d]" the impact by repeatedly referring to the incident during closing arguments "in direct contravention of prior rulings by the trial judge." *Id.* at 830–31. In contrast, the outburst in this case came from a bystander, not a witness. Further, the prosecutor—unlike her counterpart in *Stahl*—attempted to prevent the outburst by warning the family about the evidence to be presented that day and did not reference the outburst in front of the jury at any point during trial.

---

[2]Phiffer also cites several cases from other jurisdictions in support of his first point. *See generally Collier v. State*, 42 S.E. 226 (Ga. 1902); *Collum v. State*, 21 Ala. App. 220, 107 So. 35 (1926); *Rodriguez v. State*, 433 So. 2d 1273 (Fla. Dist. Ct. App. 1983). However, these cases are not binding on this court. *See Mauzy v. Legis. Redistricting Bd.*, 471 S.W.2d 570, 573 (Tex. 1971). Further, because they are—like *Stahl* and *Cooper*—factually distinguishable from the present case, we do not find them persuasive.

Phiffer's reliance on *Cooper* is similarly misplaced. In that case, a witness knelt in prayer and audibly asked God to give her the right words to say before taking the stand and made similar statements while testifying despite the trial court's prior admonishment. *Cooper*, 163 S.W. at 424–25. Thus, like the outburst in *Stahl*, the disruptive event in *Cooper* was caused by a testifying witness, not a bystander. Further, the Court of Criminal Appeals' decision to reverse and remand in *Cooper* was not based solely on the occurrence of the disruptive event; rather, the court emphasized that its decision to reverse was based on a number of other factors—including the prosecutor's making arguments that were outside the record and the defense attorneys' failure to request a continuance to secure the presence of key witnesses—that are not present in this case. *See id.* at 426.

Because Phiffer has not met his burden to show the existence of a reasonable probability that the outburst interfered with the jury's verdict and because the cases upon which he relies are distinguishable, we overrule his first point.

## B. <u>Point Two</u>: The Trial Court Did Not Abuse Its Discretion by Denying Phiffer's Request for a Jury Instruction During the Punishment Phase

In his second point, Phiffer contends that the trial court abused its discretion during the trial's punishment phase by denying his request to instruct the jury to disregard questions and answers showing that Denton police officers knew where Phiffer lived because of his connection to a prior burglary investigation. But because

evidence of Phiffer's connection to the prior burglary investigation was admitted elsewhere without objection, the complained-of error, if any, was harmless.

### 1. Phiffer's Evidentiary Objection

During the State's redirect examination of a police officer called as a punishment witness, the following exchange occurred:

[State:] Denton P.D. already knew where . . . Phiffer lived, correct?

[Officer:] That is correct.

[State:] And that was because of a previous investigation, correct?

Phiffer objected "under [evidentiary Rule] 404(b), under relevance, and [on the grounds that] the State cannot prove that [Phiffer] had anything to do with the burglary . . ." and asked the trial court to instruct the jury to disregard this testimony. The State, arguing that these questions were necessary to clear up a false impression created by Phiffer's cross-examination, opposed the instruction. The trial court, noting that the requested instruction "would bring more emphasis" to the objected-to testimony, ruled in favor of the State and refused to give the requested jury instruction, but the court did instruct the State not to delve further into "why the police department had knowledge of . . . Phiffer" unless they could prove beyond a reasonable doubt that Phiffer had committed an extraneous offense.

### 2. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App.

9

2003); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Zuliani*, 97 S.W.3d at 595. An abuse of discretion occurs only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.*

Even if a trial court improperly admits evidence, such an error generally does not warrant reversal unless it affects an appellant's substantial rights. *See* Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Coble*, 330 S.W.3d at 280. Improperly admitted evidence that did not influence the jury or had but a slight effect on the verdict is harmless. *Id.* Further, a trial court's error in improperly admitting evidence may be rendered harmless if other evidence that proves the same facts as the inadmissible evidence is admitted without objection. *See Valle v. State*, 109 S.W.3d 500, 509–10 (Tex. Crim. App. 2003).

### 3. Analysis

The objected-to testimony concerned the fact that the police knew where Phiffer lived because of his connection to a prior burglary investigation. However, because evidence of Phiffer's connection to the prior burglary investigation was admitted elsewhere without objection, even if we were to assume—without deciding—that the trial court erred by refusing to instruct the jury to disregard the objected-to testimony, such error would not warrant reversal. *See, e.g., Matz v. State*,

10

21 S.W.3d 911, 912 (Tex. App.—Fort Worth 2000, pet. ref'd) ("It is well-established that the improper admission of evidence does not constitute reversible error if the same facts are proved by other properly admitted evidence." (first citing *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999); and then citing *Couchman v. State*, 3 S.W.3d 155, 160 (Tex. App.—Fort Worth 1999, pet. ref'd))).

During the trial's guilt–innocence phase, a police detective testified that he had recognized and identified Phiffer on the surveillance video pulled as part of the murder investigation. Then, during the punishment phase, this same detective testified—without objection—that (1) he had investigated a string of burglaries that had occurred in 2021, (2) his investigation had led him to Phiffer, and (3) although his investigation did not show that Phiffer had actually committed the burglaries, the evidence had led him to believe that Phiffer may be in possession of stolen property. During this same examination, the State elicited testimony—again, without objection—that the prior burglary investigation had led police to obtain a search warrant for Phiffer's apartment, and later testimony revealed that guns, drugs, and ammunition had been found during the warrant's execution. Later, another detective testified—without objection—that Phiffer had been identified as the driver of a vehicle that had evaded law enforcement officers during their attempt to apprehend the burglary suspect and that the vehicle had been found at Phiffer's residence, which was known to police.

Because Phiffer's connection to the prior burglary investigation was clearly established by other properly admitted evidence, the trial court's refusal to instruct the jury to disregard the objected-to testimony was not reversible error. *See Matz*, 21 S.W.3d at 912. Accordingly, we overrule Phiffer's second point.

### III. CONCLUSION

Having overruled both of Phiffer's points, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: May 23, 2024