**UNITED STATES of America, ex rel. Michael Kerry CHURCH, Plaintiff-Appellant,**

v.

**Richard De ROBERTIS, Warden & Attorney General of Illinois, Respondents-Appellees.**

No. 84–2138.

United States Court of Appeals, Seventh Circuit.

Argued April 15, 1985.
Decided Aug. 23, 1985.

---

Mary L. Mikva, Chicago, Ill., for plaintiff-appellant.

Terence M. Madsen, Office of Ill. Atty. Gen., Chicago, Ill., for respondents-appellees.

Before FLAUM and EASTERBROOK, Circuit Judges, and DUMBAULD *, Senior District Judge.

DUMBAULD, Senior District Judge.

Appellant Michael Church, convicted of murder and armed violence after a trial in which a written statement which he prepared (under circumstances hereinafter described) constituted significant evidence against him, seeks release on habeas corpus. He maintains that his waiver of rights under *Miranda*[1] is defective because the detectives did not tell him that a lawyer, who had been appointed for him in a pending case other than the murder in-

---

\* The Honorable Edward Dumbauld, Senior District Judge for the Western District of Pennsylvania, sitting by designation.

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Only Fifth Amendment rights are involved. As in *Burbine v. Moran,* 753 F.2d 178, 182–83 (1st Cir.1985) no Sixth

Amendment issue regarding right to counsel is involved. With respect to the murder charge involved in the case at bar, defendant was merely a suspect and no prosecution had begun. *Kirby v. Illinois,* 406 U.S. 682, 688–90, 92 S.Ct. 1877, 1881–82, 32 L.Ed.2d 411 (1972).

vestigation, had asked Detective Arnold not to question Church, and that Detective Arnold had agreed to refrain. This raises a difficult question, one very closely related to that in *Burbine v. Moran,* 753 F.2d 178 (1st Cir.1985), *cert. granted,* — U.S. ——, 105 S.Ct. 2319, 85 L.Ed.2d 838 (1985). We need not answer the question, however, because *Miranda* does not apply to this case. The rules of *Miranda* govern "custodial interrogation" by the police. The record of the case discloses no "interrogation," and therefore there is nothing under *Miranda* for Michael Church to waive, voluntarily or otherwise. We therefore affirm the judgment of the District Court denying Church's petition.

Appellant Michael Church and his younger brother Casey were arrested Friday evening, August 10, 1974, on charges of aiding and abetting their older brother Kelly to escape from prison.

Later it developed that Michael had suggested to the estranged wife of one Randall May that he knew someone who could kill her husband and make it appear to be an accident (by burning him in his car). Michael accompanied one Coffelt to May's apartment and was present while Coffelt brutally attacked May, and shot him when he tried to run away. Besides suggesting and being present at the murder, Michael kicked May once, and tied his hands behind his back with his belt, and walked behind him toward the car. At the door May tried to escape and was shot by Coffelt. Coffelt had escaped from prison at the same time as Michael's older brother Kelly. See *People v. Church,* 102 Ill.App.3d 155, 57 Ill. Dec. 679, 682–83, 429 N.E.2d 577, 580–81 (4th Dist.Ill.App.1981).

When Kelly was arrested on Saturday, August 11, 1974, he was permitted to speak with his parents who expressed concern that Casey, the youngest child, who had never been in jail before, was in trouble. Kelly assured them that he would find out what the situation was. That night he was put into the same cell with Casey.

Then on Sunday morning Kelly spoke with an officer at the jail and was put into a cell that evening with appellant. He told appellant that to get Casey out of trouble appellant should make a statement. If he did, Kelly said the police would put the three brothers in a cell together. The officers knew, at the time they put Kelly into Michael's cell, that he would try to persuade Michael to confess.

The detectives had talked to appellant twice; each time he invoked his rights and the detectives honored his request and ceased questioning him.

■ After Kelly had urged appellant to make a statement, Michael notified an officer that he wished to talk. The detectives in charge of the investigation were not at the police station on Sunday evening but came to the station in response to appellant's request. This was permissible under *Miranda.* If the suspect initiates a conversation with the police, they may ask further questions even though the suspect had previously invoked his right to counsel. *Oregon v. Bradshaw,* 462 U.S. 1039, 1045–46, 103 S.Ct. 2830, 2834–35, 77 L.Ed.2d 405 (1983).

After the detectives arrived and found out that Michael now wanted to confess, they again gave him the *Miranda* warnings. After they read to him his *Miranda* rights, he initialled each right, stated orally that he understood his rights, and signed a waiver. Appellant stated that he did not want an attorney. The officers gave him pencil and paper and then left. Michael wrote out an eleven-page confession. The confession exculpated Casey while inculpating Michael. Michael did the work. There was no interrogation. All the detectives furnished in this case was paper and pencil. This was not fundamentally different from a confession written out, at Kelly's urging, in the absence of the police and handed to them on their arrival.

■ *Miranda* relates only to "custodial interrogation." At the outset of Chief Justice Warren's opinion the issue dealt with is described as "the admissibility of statements obtained from a defendant *questioned while in custody* ..." (384 U.S. at

445, 86 S.Ct. at 1612, italics supplied). The Court sought to impose "a proper limit upon *custodial interrogation.*" (*Ibid.*, at 447, 86 S.Ct. at 1613, italics supplied).[2] "Opportunity to exercise these rights must be afforded to him (the individual in custody being "subjected to questioning") throughout the interrogation." (*Ibid.*, at 479, 86 S.Ct. at 1630). As the Court noted in *Rhode Island v. Innis*, 446 U.S. 291, 299, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980), "not ... all statements obtained by the police after a person has been taken into custody are to be considered the product of interrogation." [3]

■ . Because *Miranda* applies only to "custodial interrogation," it makes no difference whether Michael's formal waivers of his *Miranda* rights before writing his confession were valid or ineffective, since there was no custodial interrogation in this case.

The District Court's opinion in this case states that "according to [Michael] and Kelly," the detectives "began questioning" Michael before handing him the paper and pencil, and "the officers accused [Michael] of lying." This would be interrogation, if it occurred. But the state courts chose not to believe this assertion. The state trial court concluded that the "detectives asked no questions of the Defendant. They simply gave him a supply of paper and a pen and told him he could write out whatever statement he wished to make." The appellate court summarized the encounter this way: "Defendant was advised that he had an attorney and was specifically asked if he wanted him called. Defendant replied, 'No. I want to give a statement.' At no time, however, was defendant apprised of the detective's conversation with his attorney or his instructions that the police not question the defendant. Church then started to give a verbal account, but the detective stopped him. They gave him pen and paper and left him alone to write his state-

ment." *People v. Church*, 102 Ill.App.3d 155, 429 N.E.2d 577, 580, 57 Ill.Dec. 679, 682 (4th Dist., 1981).

The state courts' findings of historical fact bind the federal courts unless subject to attack on one of the grounds listed in 28 U.S.C. § 2254(d). See *Sumner v. Mata,* 449 U.S. 539, 556–57, 101 S.Ct. 764, 773–74, 66 L.Ed.2d 722 (1981). These findings are not open to challenge; indeed they are not challenged at all. The only affidavit filed in this federal proceeding is by Kelly Church. Kelly states that he "pressured" Michael to give a statement and describes the encounter with the detectives this way: "Michael and I were brought down to a room with Officers Lindsey and Arnold and the officers gave Michael a waiver of rights form to sign. I again pressured Michael *to sign the waiver form in order to help Casey.* After Michael had written out his statement, I again pressured him to sign it and give it to the officer in order to help Casey." This affidavit does not mention any questioning by the detectives. Nothing in the papers filed in the district court suggests that the procedures used by the state courts to find the historical facts were defective. There is therefore no reason to go behind the state courts' description of the events.

Michael argues, however, that the detectives "interrogated" him by putting Kelly in his cell, knowing that Kelly would urge Michael to confess. *Innis* states that the *Miranda* rules come into play when a person is subjected to "questioning or its functional equivalent" and defines interrogation as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." 446 U.S. at 301, 100 S.Ct. at 1689 (footnotes omitted).

Putting Michael's brother in the cell was perhaps not routine procedure "attendant

---

2. On the next page the Court speaks of "in-custody interrogation" (*Ibid.*, 384 U.S. at 448, 86 S.Ct. at 1614). See also *Ibid.*, at 469, 475, 86 S.Ct. at 1625, 1628.

3. "Interrogation" requires "either express questioning or its functional equivalent." (446 U.S. at 300–01, 100 S.Ct. at 1689–90).

to arrest and custody," and the detectives knew there was a chance that Kelly would persuade Michael to confess. This does not mean, however, that putting Kelly in the cell was "interrogation." The words of an opinion such as *Innis* draw their scope from the concerns the Court addresses. The Court was concerned about official trickery.[4] It gave as examples the practice of coaching a witness to identify the suspect or a staged accusation by a "victim" of a fictitious crime in order to induce the suspect to confess to the real one, 446 U.S. at 299–300, 100 S.Ct. at 1689. See also *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980) (putting a stool pigeon in suspect's cell as part of effort to wheedle a statement from him). *Miranda* itself was a response to subtle (and not so subtle) police practices that might undercut the suspect's will and thus amount to "compulsion" to testify against oneself. The Court has consistently held that where the central concerns of *Miranda* are not activated—where in some category of cases there is no plausible argument that the police are using some device to undercut the privilege against self-incrimination—the *Miranda* rules do not apply. This has informed the definition of "custody" for purposes of custodial interrogation, see *Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136, 1142–46, 79 L.Ed.2d 409 (1984); and it also should inform the definition of "interrogation."

Unless an element of potential trickery or overbearing by the police is part of the definition of "nonverbal interrogation," almost anything that produces a confession would be interrogation. *Innis* itself rejects such a test of but-for causation. Suppose the police put a Bible in a suspect's cell, or permit him to attend a religious service at his request. Or suppose they simply leave paper and pencil in his cell. Are these things "interrogation"? But for the paper and pencil, the suspect could not write out his written confession, yet there is nothing about the action of leaving writing implements in the cell that comes close to "compulsion" as that word is used in the privilege against self-incrimination.

■ Doubtless the *Miranda* rules are designed to "relieve the 'inherently compelling pressures' generated by the custodial setting itself … and as much as possible to free courts from the task of scrutinizing individual confessions to try to determine, after the fact, whether particular confessions were voluntary." *Berkemer v. McCarty,* —— U.S. ——, 104 S.Ct.· 3138, 3147, 82 L.Ed.2d 317 (1984). The Court has opted for bright-line tests whenever possible. But there can be no bright-line definition of "interrogation" short of applying that term to every but-for cause of a confession, which the Court refused to do in *Innis.* In *Berkemer* itself the Court looked carefully at the circumstances of ordinary traffic stops and concluded that they do not pose the sort of dangers of compulsion that call for *Miranda* safeguards, and it held that warnings need not be given until a detained suspect is formally arrested. 104 S.Ct. at 3148–52. The same sort of attention to detail is necessary when defining "interrogation." Although no one test fits all cases, we think it clear that not everything leading a suspect to change his mind amounts to interrogation.

■ The detectives did not plant in Michael's mind a desire to protect Casey; that suggestion came from others in the Church family. The detectives did not make Kelly their agent by promising Kelly something in exchange for getting Michael to confess; Kelly did what he did for the good of Casey and the family, not for the police. The detectives did not even initiate the idea of consultation or urge Kelly to talk to Michael; they acceded to Kelly's request. The detectives furnished nothing but an

---

**4.** The presence of deliberate or reckless trickery or deception constrained the First Circuit on the facts of *Burbine, supra,* to exclude the defendant's confession. (753 F.2d at 185, 187). The absence of such factors in the case at bar distinguishes it clearly from *Burbine.*

opportunity for members of the family to confer and the paper on which to write the confession. The result was a spontaneous, altruistic confession. It was the work of the Church family, not of "custodial interrogation" within the meaning of *Miranda*.

Because there was no custodial interrogation, the court need not address Michael's argument that he had a special need for a lawyer's advice to dispel the effects of a statement made to him by an assistant state's attorney shortly after his arrest— that if Michael had been present at the murder but had not pulled the trigger, the state might charge him with aggravated battery rather than murder. This bit of "advice" was accurate in the strict sense; the state "might" charge those other than the triggerman with something less than murder. It may have been misleading nonetheless.[5] If the advice played a substantial role in inducing the confession, Michael might raise an argument that the confession itself was involuntary. This Court need not ponder whether this hypothetical argument would be a good one, for Michael does not advance it. He did not raise this argument in the state court or here; he argues only that the "advice" of the assistant state's attorney shows why he needed his lawyer. The detectives told Michael he had a lawyer and offered to wait; Michael insisted on confessing at once. He was responding to the call of the family, not the pressure of the detectives. Because there was no interrogation, that is the end of the matter.

The judgment of the District Court is AFFIRMED.

---

5. But in view of the fact that Michael not only participated in the mistreatment of May but had suggested the murder to May's estranged spouse, it was somewhat unlikely that he could believe that the prosecutors might regard him as deserving lenient treatment.