781 F.2d 1516
 Richard Raymond DeANGELO, Petitioner-Appellant,
v.
Louie L. WAINWRIGHT, Respondent-Appellee.
 No. 85-5140.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 10, 1986.
 
 Michael D. Gelety, Ft. Lauderdale, Fla., for petitioner-appellant.
 Georgina Jiminez-Orosa, Asst. Atty. Gen., W. Palm Beach, Fla., for respondent-appellee.
 Appeal from the United States District Court for the Southern District of Florida.
 Before JOHNSON, Circuit Judge, HENDERSON,* Senior Circuit Judge, and ALLGOOD,** Senior District Judge.
 HENDERSON, Senior Circuit Judge:
 
 
 1
 This appeal centers on two separate conversations that took place in the hospital room of the petitioner-appellant, Richard Raymond DeAngelo. The talks, which involved DeAngelo and an acquaintance, Gary Leon, concerned a shooting in which DeAngelo was seriously injured and Leon's brother, Leonard, was killed.
 
 
 2
 In April, 1978, after an apparent drug deal went sour, a shoot-out ensued that resulted in injury to DeAngelo and the death of Leonard Leon. DeAngelo was taken to a nearby hospital in serious condition, where he was questioned by police officers without first having been advised of his rights. Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966). Nine days after the shooting, Gary Leon went to DeAngelo's hospital room wearing a body wire provided by the local police. Gary questioned DeAngelo about the shooting and the circumstances of his brother's demise. The tapes of this talk, however, proved to be inaudible. Two days later--eleven days after the shooting--Gary Leon returned to DeAngelo's hospital room and again spoke with him about the shoot-out. Once again Gary Leon wore a concealed body wire and once again the tapes were inaudible. DeAngelo, who was under neither arrest nor police guard during the time of these two conversations, subsequently was arrested and tried for first degree murder and armed robbery.
 
 
 3
 At DeAngelo's trial the state sought to introduce the tapes and also Gary Leon's testimony about the two conversations. The admissibility of this evidence was not raised until after the commencement of the trial. With the jury excluded from the courtroom, the state trial court heard a proffer of facts and argument from both sides. No formal hearing was held nor was there any testimony on the suppression issue. The trial judge ruled that the tapes were inadmissible regardless of their clarity. He also held, however, that under Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), Gary Leon's testimony with respect to the two conversations was admissible. Leon was then called as a witness for the state and apparently testified that DeAngelo made incriminating statements to him in one or both of the conversations.[1] DeAngelo subsequently was convicted of first degree murder and armed robbery.
 
 
 4
 The conviction was appealed to the Florida Court of Appeal, which denied relief. DeAngelo v. Wainwright, 403 So.2d 573. (Fla.Dist.Ct.App.1981). DeAngelo's appeal to the Florida Supreme Court was likewise rejected. He then filed this habeas corpus action in the United States District Court for the Southern District of Florida. A federal magistrate reviewed the record and issued a report finding that a hearing was not necessary and recommended that DeAngelo's petition be denied. The district court adopted the magistrate's report and recommendation. DeAngelo appeals that denial.
 
 
 5
 28 U.S.C. Sec. 2254(d) requires a federal habeas court to apply a presumption of correctness to the state court's factual findings unless one of seven conditions contained in Sec. 2254(d) mandates a separate federal evidentiary hearing. Hearn v. James, 677 F.2d 841, 844 (11th Cir.1982). Legal questions or mixed questions of law and fact, however, are not subject to this presumption. Sumner v. Mata, 455 U.S. 591, 597, 102 S.Ct. 1303, 1306, 71 L.Ed.2d 480, 486 (1982) (per curiam).
 
 
 6
 Although it is not clear whether the district court accorded the Sec. 2254(d) presumption to the trial court's decision that DeAngelo's statements were voluntary under Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), it appears that such was the case. To the extent that the district court deferred to this presumption, we reverse. In the recent case of Miller v. Fenton, --- U.S. ----, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), rev'g 741 F.2d 1456 (3d Cir.1984), the Supreme Court of the United States held that whether a statement "was obtained in a manner compatible with the requirements of the Constitution is a matter for independent federal determination," and is not subject to the Sec. 2254(d) presumption of correctness. Id. at ----, 106 S.Ct. at 451.
 
 
 7
 The district court, relying on Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), held that a state prisoner is not entitled to federal habeas corpus relief if the claim is fully and fairly litigated in the state court. In Stone, the Supreme Court was concerned with a fourth amendment violation. The district court would expand this reasoning, by analogy, to fifth and sixth amendment claims as well. We disagree with this approach.
 
 
 8
 Faced with the opportunity to do so, this circuit specifically has refused to extend Stone beyond the fourth amendment context. Jarrell v. Balkcom, 735 F.2d 1242, 1253 (11th Cir.1984) ("For these reasons, and because neither this circuit nor the Supreme Court have even extended Stone to Miranda claims, we refuse to extend Stone to [involuntary confession] claims."), cert. denied, --- U.S. ----, 105 S.Ct. 2331, 85 L.Ed.2d 848 (1985). By holding that the federal court must make an independent determination of the voluntariness of challenged statements, Miller also impliedly rejects enlarging the Stone decision to include inquiries into the voluntariness of confessions. Miller, --- U.S. at ----, 106 S.Ct. at 451-54. In sum, "extension of Stone beyond its fourth amendment roots would be a major departure from established case law." Jarrell, 735 F.2d at 1252. We decline to make that departure.
 
 
 9
 The admission of Gary Leon's testimony violated DeAngelo's fifth amendment privilege against self incrimination or his sixth amendment rights to counsel only if DeAngelo had the right to be represented by counsel at the time the conversations took place. The sixth amendment right to counsel arises when the adversarial process is set in motion, normally after an accusatory pleading is filed against the accused. United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). The right, however, may attach although no accusatory pleading is pending when the investigation of the crime focuses on that particular person. Escobedo v. Illinois, 378 U.S. 478, 485, 84 S.Ct. 1758, 1762, 12 L.Ed.2d 977, 982 (1964). "When the process shifts from the investigatory to accusatory--when its focus is on the accused and its purpose is to elicit a confession our adversary system begins to operate, and, under the circumstances here, the accused must be permitted to consult with his lawyer." Id. at 492, 84 S.Ct. at 1766, 12 L.Ed.2d at 987. DeAngelo claims that Escobedo is applicable in this instance because the investigation had focused on him and the intent of the police was accusatory in placing a microphone on the person of Gary Leon. He does not dispute, however, that he was under neither arrest nor police guard while in the hospital.
 
 
 10
 During the hearing before the trial court on the admissibility of the conversations the following colloquy took place between the court and the district attorney:
 
 
 11
 The Court: Would the conversations be admissible if [investigating officer] Paduda went in and took them?
 
 
 12
 Mr. Garfield [Prosecutor]: I don't think so.
 
 
 13
 * * *
 
 
 14
 Mr. Garfield: ... I think on May 1st DeAngelo was a primary suspect, so I think he would properly have to be advised of his rights by the police officer.
 
 
 15
 Record on Appeal, Vol. 2 at 192-93. The state also admitted that Gary Leon acted as an "agent of the police." Id., Vol. 2 at 210. On the other hand, during the same hearing, DeAngelo acknowledged that Gary Leon would testify that he went to DeAngelo's room on his own accord to find out what happened to his brother, and merely was asked by the police to wear a microphone during his conversation. Id., Vol. 2 at 202.
 
 
 16
 Whether DeAngelo was in custody, as was the case in Escobedo, thereby triggering the need for Miranda warnings, obviously is a pivotal question. The reach of Escobedo, however, has been severely curtailed by the Supreme Court. The Court explained that Escobedo actually was an effort to restrain self incrimination rather than a means to determine when the right to counsel attaches. Johnson v. New Jersey, 384 U.S. 719, 729, 86 S.Ct. 1772, 1779, 16 L.Ed.2d 882, 890 (1966). It also narrowly limited the case to its facts. See Kirby v. Illinois, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411, 417 (1972); Johnson, 384 U.S. at 733-34, 86 S.Ct. at 1781, 16 L.Ed.2d at 892. The Court views Escobedo as an aberration in an otherwise unbroken chain of precedent which holds that a defendant does not have a constitutional right to counsel until adversary judicial proceedings are brought against him. Kirby, 406 U.S. at 688-89, 92 S.Ct. at 1882, 32 L.Ed.2d at 417.
 
 
 17
 Neither the state trial court nor the district court made any findings as to whether DeAngelo was in custody within the meaning of Escobedo when visited by Gary Leon. The Florida District Court of Appeals did note that "it is clear that DeAngelo was not in custody when Gary Leon visited him in the hospital." DeAngelo v. State, 403 So.2d 573, 575 (Fla.Dist.Ct.App.1981). Nevertheless, a remand is necessary to determine several crucial facts. It is possible, perhaps even probable, that DeAngelo, whom the state concedes was a primary suspect when Gary Leon first visited him, became the only suspect following that conversation. If the information gleaned by Leon the first time ended the general investigation phase, as is highly possible, the second conversation was accusatory in nature and solely intended to produce an audible taped confession that would ensure DeAngelo's conviction at trial. This possibility is supported by that part of the record before us, which includes the state's admission that the police provided Gary Leon with specific questions to ask DeAngelo. Record on Appeal, Vol. 2, at 204-05. These facts, in conjunction, arguably may rise to a violation similar to that in United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980) (jailed defendant's rights were violated when police placed paid informant in defendant's cell to elicit a confession).[2]
 
 
 18
 The Supreme Court has made clear that the need for Miranda warnings is predicated on a fear that questioning conducted in a custodial setting often occurs in a coercive atmosphere conducive to confessions of an involuntary nature. See Minnesota v. Murphy, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984); United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); Beckwith v. United States, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The central concern is coercion--whether it be coercion by a show of force or by subterfuge. See State ex rel. Church v. De Robertis, 771 F.2d 1015, 1019 (7th Cir.1985). The conduct of the police in this case could qualify as an effort to circumvent DeAngelo's sixth and fifth amendment rights after the police had decided to arrest him.
 
 
 19
 The district court did not address this issue, instead relying on its Stone v. Powell analysis and the Sec. 2254(d) presumption. The testimony of Gary Leon is not in the record before us so it is impossible to determine at this point whether the investigation had focused on DeAngelo at the time of the first or second visit or both. This information is pertinent to whether the conversations were "custodial interrogations" of DeAngelo with a view toward gathering incriminating evidence against him or were efforts by Leon to learn the details of his brother's death in a nonadversarial atmosphere. See, e.g., Church, 771 F.2d 1015, 1017-19 (placing incarcerated suspect's brother in suspect's cell to encourage a confession not questioning or its equivalent). On remand, these matters should be considered by the district court on the full record of DeAngelo's trial, followed by written findings of fact and conclusions of law.
 
 
 20
 REVERSED and REMANDED.
 
 
 
 *
 See Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation
 
 
 [1]
 The transcript of the evidence in DeAngelo's trial, including the testimony of Gary Leon, was not available to the magistrate or the district court, nor is it a part of the record on appeal. The transcript of the hearing on the motion to suppress Leon's testimony was furnished to the district court by DeAngelo and is in the record before us
 
 
 [2]
 Once the sixth amendment right to counsel attaches,--i.e., once the defendant is in custody--the police may not evade its strictures by means of trickery or circuitous machinations. See, e.g., Maine v. Moulton, --- U.S. ----, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985) (police violated indicted defendant's sixth amendment right to counsel by using codefendant, acting as a government informer, to record conversations with first defendant regarding defense strategy)